UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CALIFORNIA NORTHERN RAILROAD COMPANY,   )
                                         )
                     Plaintiff,      )     11 C 7170
                                         )
             vs.             )     Judge Feinerman
                                       )
GUNDERSON RAIL SERVICES, LLC, f/k/a    )
GUNDERSON RAIL SERVICES, INC.,         )
                                       )
                    Defendant.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff California Northern Railroad Company filed this diversity suit against

Defendant Gunderson Rail Services, LLC, alleging that Gunderson breached its contractual duty

to defend and indemnify California Northern in *Walters v. The Belt Railway Co. of Chicago*, No.

2006 L 7349 (Cir. Ct. Cook Cnty., Ill., filed July 13, 2006), a tort action brought against

California Northern, Gunderson, and others in Illinois state court. Doc. 1. California Northern

has moved for summary judgment on the issue of liability for Count I of its complaint, which

alleges that Gunderson had and breached a duty to defend California Northern in the underlying

lawsuit. Doc. 29. Because the pertinent provisions of California Northern's contract with

Gunderson are so indefinite that the court cannot ascertain the parties' respective rights and

obligations regarding the duty to defend in the particular circumstances presented by the *Walters*

case, California Northern's motion is denied.

In July 2001, the parties entered into a Freight Car Inspection & Repair Contract

("Agreement"). Doc. 1-1; Doc. 77 at ¶ 6. The Agreement provided that Gunderson was to

perform inspections and repairs on railcars received by California Northern in interchange from

-1-

other railroads at California Northern's interchange locations, and Gunderson in fact provided such services during the Agreement's five-year term. Doc. 77 at ¶¶ 7-8. The Agreement contains an indemnification provision, Doc. 1-1 at 4, which will be discussed in detail below.

In July 2006, Joseph Walters brought the *Walters* case against his employer, the Belt Railway Company of Chicago, alleging that he had fallen and been injured on the job when a handrail he was holding broke as he was climbing onto a railcar. Doc. 77 at ¶ 11; Doc. 31-2 at 7-14 (Walters's initial complaint). Upon learning that Gunderson had inspected and repaired the railcar on California Northern's premises about two months before the accident, The Belt brought third-party claims for negligence against California Northern and Gunderson. Doc. 77 at ¶¶ 12-14; Doc. 31-2 at 1-6 (The Belt's third-party complaint). Walters then amended his complaint to bring claims directly against California Northern and Gunderson, alleging that their negligence caused his injury. Doc. 77 at ¶ 15; Doc. 15-8 (Walters's amended complaint).

Walters's amended complaint alleges that California Northern had and breached duties to inspect the railcar when it was on California Northern's tracks and to ensure that the railcar was not defective:

> 9.     Railroad car utilization in the industry is managed on a national basis in accordance with Car Service Rules promulgated by the Association of American Railroads (AAR). The AAR is an industry organization that regulates the railroad industry by promulgating practices setting forth the types of freight car inspection and repair work which must be performed. Railroads, including California Northern, subscribe to these rules, thereby agreeing to be governed by them in their operations.

> 10.     The AAR Rules provide the specific guidelines and criteria regarding when freight car parts are defective and need repair or replacement. Under the rules, the handling line (the carrier with possession of the freight car) must make certain repairs to "foreign" freight cars (freight cars not owned by the handling line). California Northern was the handling line for the freight car that is the subject of this litigation.

-2-

* * *

12.     On or about November 15, 2005, while on California Northern's railroad in the State of California, a handhold on the railcar referred to in Plaintiffs Complaint at Law, rail car SRY28603l[,] required repairs.

13.     California Northern was under a duty to repair the handhold on the railcar in a reasonably safe and proper manner in accordance with the AAR Interchange Rules, the Federal Safety Appliance Act, and the Code of Federal Regulations.

14.     California Northern was further under a duty to inspect the railcar's handhold to ensure that it was not defective and had been repaired in a proper manner before delivering the empty railcar to another railroad in interstate commerce.

* * *

18.     Defendant, CALIFORNIA NORTHERN, caused repairs to be performed to said car in a careless and negligent manner, to wit:

       (a)     Carelessly and negligently delivered a defective railcar, specifically Car Number 286031, to service interstate commerce in violation and contrary to 49 U.S.C. §20302, and the Code of Federal Regulations, Title 49, Chapter II, parts 231.18, 231.6, and 231.27;

       (b)     Carelessly and negligently failed to properly inspect the handhold, specifically Car Number 286031, before delivering the railcar to service in interstate commerce in violation and contrary to 49 U.S.C. §20302, and the Code of Federal Regulations, Title 49, Chapter II, parts 231.6 and 231.27;

       (c)     Carelessly and negligently failed to exercise reasonable care in repairing the handhold in question and delivering it to service in interstate commerce.

       (d)     The careless and negligent acts of the Defendant, CALIFORNIA NORTHERN, made the condition of Railcar SRY 286031 unreasonably dangerous.

Doc. 15-8 at pp. 9-11, ¶¶ 9-10, 12-14, 18. Walters's amended complaint further alleges that

Gunderson, as California Northern's agent, had and breached duties to inspect the railcar and to

ensure that it was not defective:

          24.     California Northern did, prior to the occurrence alleged, delegate the inspection and repair of rail cars traveling on its railroad lines, including the rail car involved in this occurrence, to Gunderson Rail, which then and there became its agent for the purpose of inspecting and repairing rail cars traveling on California Northern's lines.

          25.     In that regard, on or about November 15, 2005, Gunderson Rail, as agent for California Northern, had a duty to repair the handhold on the rail car in a reasonably safe and proper manner, and to inspect the rail car's handhold to ensure that it was not defective before delivering it to service in interstate commerce.

          26.     On or about November 15, 2005, Defendant, GUNDERSON RAIL, released railcar SRY 2856031 [*sic*] to service in interstate commerce without first ascertaining that the railcar's handholds were secure and adequate for use.

          27.     Defendant, GUNDERSON RAIL, as an agent of California Northern, committed one or more of the following careless and negligent acts and/or omissions:

          (a)     Carelessly and negligently repaired the handholds on railcar SRY 286031 in violation of the Code of Federal Regulations, Title 49, Chapter II, Parts 231.18, 231.6 and 231.27;

          (b)     Carelessly and negligently delivered a defective railcar, specifically Car Number SRY 286031, to service interstate commerce in violation and contrary to 49 U.S.C. §20302, and the Code of Federal Regulations, Title 49, Chapter II, parts 231.18, 231.6, and 231.27;

          (c)     Carelessly and negligently failed to properly inspect the handhold, specifically Car Number SRY 286031, before delivering the railcar to service in interstate commerce in violation and contrary to 49 U.S.C. §20302, and the Code of Federal Regulations, Title 49, Chapter II, parts 231.6 and 231.27;

      (d)      Carelessly and negligently failed to exercise
reasonable care in repairing the handhold in question
and delivering it to service in interstate commerce.

      (e)      The careless and negligent acts of the Defendant,
GUNDERSON RAIL, made the condition of Railcar
SRY 286031 unreasonably dangerous.

*Id.* at pp. 13-14, ¶¶ 24-27.

Invoking the Agreement's indemnification provision, California Northern demanded that

Gunderson take over its defense and indemnify it for any judgment that might be entered against

it in *Walters*. Doc. 77 at ¶ 16. Gunderson refused, and California Northern paid for its own

legal defense. *Id.* at ¶¶ 17-20. Ultimately, California Northern settled with Walters for

$212,500. *Id.* at ¶¶ 21-22; Doc. 1 at ¶ 20.

California Northern then brought this suit against Gunderson. This court has subject

matter jurisdiction under 28 U.S.C. § 1332(a). The parties are diverse: California Northern is a

Delaware corporation with its principal place of business in California, while Gunderson is a

limited liability company whose sole member, The Greenbrier Companies, Inc., is an Oregon

corporation with its principal place of business in Oregon. Doc. 80 at ¶¶ 1-4; Doc. 88 at ¶¶ 1-4.

The amount in controversy exceeds $75,000. Doc. 77 at ¶¶ 1-3.

As noted above, California Northern seeks summary judgment on its claim that

Gunderson had a duty to defend California Northern in the *Walters* case. The parties do not

dispute any material questions of fact; the motion turns on the interpretation of the Agreement.

The parties agree that Oregon law controls interpretation of the Agreement, Doc. 77 at ¶ 9, and

the Agreement itself so provides, Doc. 1-1 at 6, so that is the law the court will apply. *See Auto-

Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 546-47 (7th Cir. 2009).

The Agreement's indemnification provision provides as follows:

**Section 12. Indemnification**

(a)     Contractor [Gunderson] does hereby assume liability for, and does hereby unconditionally agree to indemnify, protect, save and keep harmless Railroad [California Northern] and its directors, officers, representatives and employees from and against and agrees to pay, when due, *any and all claims and losses arising out of Contractor's work as described in this Agreement.* In no event will Contractor be required to indemnify Railroad's [*sic*] for Railroad's negligence.

(b)     In like manner, Railroad does hereby assume liability for, and does hereby unconditionally agree to indemnify, protect, save and keep harmless Contractor and its directors, officers, representatives and employees from and against and agrees to pay, when due, *any and all claims and losses arising out of Railroad's possession, use and operation of cars.*

Doc. 1-1 at 4 (emphases added). Section 12 does not explicitly mention or provide for any duty to defend, but under Oregon law the duty to defend is implicit in the duty to indemnify. *See St. Paul Fire & Marine Ins. Co. v. Crosetti Bros., Inc.*, 475 P.2d 69, 71 (Or. 1970) ("The rule in most jurisdictions … is that when a claim is made against an indemnitee for which he is entitled to indemnification, the indemnitor is liable for any reasonable expenses incurred by the indemnitee in defending against such claim, regardless of whether the indemnitee is ultimately held not liable. We so hold.") (citations omitted); *Forsythe v. Homestead Dev. Corp.*, 919 P.2d 537, 542 (Or. App. 1996) (same). That is why the court must consider § 12 in deciding whether Gunderson had and breached a duty to defend California Northern in *Walters*.

It appeared to the court after reviewing the parties' summary judgment briefs (Docs. 30, 72, 78) that § 12 contained contradictory terms regarding who must defend whom in lawsuits like *Walters* that involve work performed under the Agreement, that name both California Northern and Gunderson as defendants, and that allege that each breached its own duties to ensure that the railcar in question was safe. The court ordered the parties to submit supplemental

briefs addressing, among other things, these two issues: (1) whether § 12(a), which requires

Gunderson to defend California Northern in certain circumstances, and § 12(b), which requires

California Northern to defend Gunderson in certain circumstances, required each party to defend

the other in *Walters*; and (2) if so, whether the indemnification provision is unenforceable for

indefiniteness. Doc. 82. The parties filed supplemental briefs, which have provided substantial

assistance to the court. Docs. 90, 92.

The second issue has a clear answer: if § 12(a) required Gunderson to defend California

Northern in *Walters*, and if § 12(b) required California Northern to defend Gunderson in the very

same case, then § 12 is indefinite and nonsensical, and thus unenforceable. "The doctrine of

indefiniteness … makes a contract unenforceable when it omits a crucial term that cannot be

supplied by interpretation." *ATA Airlines, Inc. v. Fed. Express Corp.*, 665 F.3d 882, 887 (7th

Cir. 2011) (Tennessee law). Another way of putting the doctrine is that "[a] contract may be

enforced even though some contract terms may be missing or left to be agreed upon, but if the

essential terms are so uncertain that there is no basis for deciding whether the agreement has

been kept or broken, there is no contract." *Acad. Chi. Publishers v. Cheever*, 578 N.E.2d 981,

984 (Ill. 1991); *see also* Restatement (Second) of Contracts § 33(2) (1981) ("The terms of a

contract are reasonably certain if they provide a basis for determining the existence of a breach

and for giving an appropriate remedy."). The indefiniteness doctrine is part of Oregon law. *See*

*Bonnevier v. Dairy Co-op Ass'n*, 361 P.2d 262, 266-67 (Or. 1961) ("[A] purported meeting of

the minds in order to effect a contract must render reasonably certain all of the terms of the

would-be undertaking so that a court, in the event of litigation, may know what each of the

alleged contracting parties bound himself to do. If a court is to enforce an alleged agreement …

it must be able to ascertain from the agreement itself … the duties of those who, it is claimed,

bound themselves to the alleged future course of action."); *Gaines v. Vandecar*, 115 P. 721, 723 (Or. 1911) ("If the contract in any case is so indefinite as to make it impossible for the court to decide just what it means, and fix exactly the legal liability of the parties, it cannot result in an enforceable contract."); *Kaiser Found. Health Plan of the Nw. v. Doe*, 903 P.2d 375, 380 (Or. App. 1995) ("A court cannot enforce a contract unless it can determine what it is. ... Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, [may] prevent the creation of an enforceable contract.") (quoting *Corbin on Contracts* § 95 (1950)).

The only sensible contractual regime is one requiring, in any given suit, that California Northern defend Gunderson, that Gunderson defend California Northern, or that neither defend the other. It would make no sense to require California Northern to defend Gunderson and Gunderson to defend California Northern in a single case. California Northern acknowledged as much at a hearing on November 29, 2012, at which its summary judgment motion was argued. Any contract requiring Gunderson to defend California Northern and vice-versa in a single case where both are defendants would be indefinite and unenforceable; the court could not sensibly order each side to defend the other, and would have no way to "ascertain from the agreement itself" which party bore the duty to defend the other. *Bonnevier*, 361 P.2d at 266.

That leaves the first issue, which California Northern does contest: whether the Agreement in fact required Gunderson and California Northern to defend each other in *Walters*. Oregon law has this to say about the duty to defend: "Whether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy. An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the

policy. In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered by the policy." *Ledford v. Gutoski*, 877 P.2d 80, 82 (Or. 1994) (citations omitted). Indemnification provisions in non-insurance contexts, like § 12 of the Agreement, are treated the same as insurance contracts. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Starplex Corp.*, 188 P.3d 332, 340 (Or. App. 2008).

The court will assume with California Northern that § 12(a), standing alone and putting aside its conflict with § 12(b), required Gunderson to defend California Northern in *Walters*. *Compare* Agreement § 12(a) (Doc. 1-1 at 4) ("Contractor [Gunderson] does hereby assume full liability for ... any and all claims and losses arising out of Contractor's work") *with* Walters's amended complaint at ¶¶ 24-27 (Doc. 15-8 at pp. 13-14) (alleging that Gunderson breached its duty to inspect the railcar and to ensure that it was not defective). The dispositive question here is whether § 12(b) required California Northern to defend Gunderson in *Walters*.

Section 12(b) provides: "In like manner [referring to § 12(a)], Railroad [California Northern] does hereby ... unconditionally agree to indemnify, protect, save and keep harmless Contractor [Gunderson] ... from and against ... any and all claims and losses arising out of Railroad's possession, use and operation of cars." Doc. 1-1 at 4. California Northern contends that Walters's claim and The Belt's third-party claim in *Walters* did not arise out of California Northern's "possession, use and operation" of the railcar on which Walters was injured. That contention is incorrect. Recall that in deciding whether California Northern has a duty to defend Gunderson under § 12(b), "the court looks only at the facts alleged in the complaint to determine whether they provide a basis for recovery that could be covered" by § 12(b). *Ledford*, 877 P.2d at 82. Walters's amended complaint plainly alleges that the problem with the handrail arose

from California Northern's "possession" of the railcar. It alleges that AAR Rules required California Northern to "make certain repairs" to the railcar because of its status as the "handling line" of that railcar, which the complaint itself defines as "the carrier with *possession* of the freight car" (emphasis added); that the railcar came into California Northern's possession in November 2005; that California Northern had a duty to repair the railcar's handrail in a reasonably safe and proper manner; that California Northern, before delivering the railcar to another railroad, had a further duty to inspect the handrail to ensure that it was not defective and had been properly repaired; that California Northern caused the repairs to be performed in a careless and negligent manner; and that California Northern carelessly and negligently failed to exercise reasonable care in repairing the handrail and in delivering the railcar to service in interstate commerce. Doc. 15-8 at pp. 9-11, ¶¶ 10, 12-14, 18. The Belt's third-party claim makes similar allegations. Doc. 31-2 at 5-6 (alleging that California Northern "[n]egligently delivered a defective railcar to service").

Thus, although Walters's injury occurred after the railcar left California Northern's possession, California Northern's alleged breach of its duties is alleged in *Walters* to have occurred when the railcar was in California Northern's possession. It follows that Walters's claim and The Belt's third-party claim are claims "arising out of Railroad's [California Northern's] possession, use and operation of" the railcar within the meaning of § 12(b) of the Agreement. Section 12(b), standing alone and putting aside its conflict with § 12(a), therefore required California Northern to defend Gunderson in *Walters*.

In an effort to avoid this conclusion, California Northern notes that Gunderson had not in fact demanded that California Northern defend or indemnify it in the underlying suit. From this premise, California Northern argues that Gunderson's failure to make a demand was a judicial

admission by Gunderson that it had no right to be defended or indemnified by California Northern under § 12(b). California Northern put the argument this way at the November 29 hearing on its summary judgment motion: "If [§] 12(b) would be invoked because of the allegation [in Walters's amended complaint] you're referring to, then why didn't Gunderson tender their defense to us? I think their failure to tender their defense and claim we owed them a duty to defend and a duty to indemnify under [§] 12(b) is an admission. It's an admission that there is no duty on our part to defend them or to indemnify them, and I don't think they can come in now and make that claim." The argument is incorrect; a party's pre-litigation failure to assert a legal right is not a judicial admission that the right does not exist.

"A judicial admission is a statement, normally in a pleading, that negates a *factual claim* that the party making the statement might have made or considered making. … [I]n order to qualify as judicial admissions, an attorney's statements must be deliberate, clear and unambiguous." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) (emphasis added) (internal quotation marks omitted). Gunderson's failure to demand a defense and indemnification from California Northern does not fit that definition. Gunderson's inaction pertains not to a "factual claim" that Gunderson is making, but to a legal argument regarding a question of law, the interpretation of the Agreement. *See Hoffman Construction Co. of Alaska v. Fred S. James & Co. of Or.*, 836 P.2d 703, 706 (Or. 1992) ("Resolution of this case turns on a question of law, the interpretation of the insurance policy."). And nor could Gunderson's inaction be called a "deliberate, clear and unambiguous" "statement[]" by Gunderson that § 12(b), standing alone, did not obligate California Northern to defend Gunderson in the *Walters* litigation. *See Higgins v. Mississippi*, 217 F.3d 951, 954-55 (7th Cir. 2000) (noting that "a judicial admission is in the nature of a waiver" and that "[a] waiver is a *deliberate*

-11-

relinquishment of a known right") (emphasis added). Accordingly, Gunderson's failure to demand that California Northern indemnify it does not alter the court's analysis of the Agreement.

California Northern argues that the requirement in § 12(b) that it defend Gunderson for claims arising out of California Northern's "possession, use and operation of cars" is inapplicable to the *Walters* litigation because the claims against Gunderson there arise out of California Northern's *possession* of the railcar but perhaps not out of its *use* or *operation* of that car. In other words, California Northern believes that its duty to defend under § 12(b) arises only if the underlying suit is based on California Northern's possession of a railcar, use of the railcar, *and* operation of the railcar—that is, only if California Northern's alleged misconduct occurred when it was doing all three things (possessing, using, and operating) rather than just one or two. That reading of § 12(b), while perhaps grammatically possible, is substantively implausible; the only plausible reading is that California Northern was obligated to defend Gunderson in suits arising out of California Northern's possession of railcars, in suits arising out of California Northern's use of railcars, and in suits arising out of California Northern's operation of railcars.

Suppose that Gunderson inspected and repaired a railcar under the Agreement and delivered it back into California Northern's possession. If California Northern then negligently reversed Gunderson's repairs, or created new defects, while the railcar was in California Northern's possession though not its active use or operation, with the result that a third party like Walters later was injured by the defects, then the injury would have arisen out of California Northern's possession of the car but not its operation or use of it. It would be absurd to say that if the injured party sued Gunderson, Gunderson would be unable to obtain a defense from

California Northern under § 12(b) because it was not using or operating the car when it breached its duty not to make the car unnecessarily dangerous. *See Ollilo v. Clatskanie Peoples' Util. Dist.*, 132 P.2d 416, 419 (Or. 1942) ("It is universally held … that 'and' may be construed to mean 'or' when necessary to effectuate the intention of the legislature and to avoid an unreasonable or absurd result."). Read sensibly, § 12(b) obligated California Northern to indemnify Gunderson for liability arising out of California Northern's "possession" of a car, whether or not the liability also arises out of its "use" or "operation" of the car. *See Pendleton Sch. Dist. 16R v. State*, 185 P.3d 471, 479-80 (Or. App. 2008) ("It is not that unusual to read the word 'and' … in a disjunctive sense. Thus, the sentence, 'if you obtain a passport, you may travel to England, France, and Germany,' does not mean that obtaining a passport entitles one to travel only to *all three* countries."), *aff'd in part and rev'd in part on other grounds*, 200 P.3d 133 (Or. 2009); *In re Velazquez*, 660 F.3d 893, 897-98 (5th Cir. 2011) (noting that "'and' can be interpreted as disjunctive when the context requires," and that "[o]ne of the recognized uses of 'and' is to refer to 'either or both' of two alternatives") (internal quotation marks omitted); *Trammel Crow Residential Co. v. Am. Protection Ins. Co.*, 2012 WL 4174898, at *10 (N.D. Tex. Sept. 20, 2012) (holding in the context of an insurance contract that "the intent of the parties is effectuated by reading 'and' as 'either or both'").

    To summarize: California Northern seeks summary judgment on Count I, which claims that Gunderson breached its duty under § 12(a) of the Agreement to defend California Northern in *Walters*. However, as it pertains to the parties' respective duties to defend, and in the particular circumstances of *Walters*, the Agreement "is so indefinite as to make it impossible for the court to decide just what it means, and fix exactly the legal liability of the parties." *Gaines*,

115 P. at 723. It follows that the doctrine of indefiniteness precludes enforcement of § 12(a). Accordingly, California Northern's summary judgment motion is denied.

If the result in this case is less than optimal from an economic perspective, the fault lies exclusively with how § 12 was drafted. Walters's injury allegedly resulted from a failure to perform adequate maintenance on the railcar's handrail. Although Walters alleged that California Northern had a legal duty to ensure that the railcar was in good condition, California Northern had contracted with Gunderson for Gunderson to perform that function. Because California Northern and Gunderson had agreed that Gunderson would be responsible for inspecting and repairing railcars that passed over California Northern's tracks, as between California Northern and Gunderson, it would have made the most economic sense for Gunderson to assume sole responsibility for liability caused by shortcomings in its performance of those inspections; Gunderson was the "least-cost avoider," the party in the best position to insure that it performed its repair and maintenance tasks adequately. *See S. Pac. Co. v. Layman*, 145 P.2d 295, 297 (Or. 1974) (stating that indemnity contracts "are usually intended to provide against loss or liability of one party, through the operations of the other, or caused by physical conditions that are under the control of the other—over which the party indemnified has no control and the party indemnifying has control") (internal quotation marks omitted). Section 12(a) so provides, and California Northern evidently thought that was the deal it was getting with Gunderson. But § 12 did not give California Northern that deal, at least in the circumstances of the *Walters* litigation, where § 12(b) nullifies § 12(a) by imposing an equal and opposite defense and indemnification duty on California Northern.

The result may not be what California Northern expected, but it is mandated by the unambiguous terms of § 12(b) and the indefiniteness created by its juxtaposition with § 12(a).

-14-

*See Wilder Corp. of Del. v. Thompson Drainage & Levee Dist.*, 658 F.3d 802, 806 (7th Cir. 2011) (noting that the parties could have written their contract so that liability would fall on the least-cost avoider, but had failed to do so). When the terms of a contract require an economically non-ideal result, the court's duty is to enforce that result rather than rewrite the contract to reach a better one, "for when it is feasible for parties to arrange their affairs by contract they should have to do so rather than be allowed to make a court do it for them." *Id.* at 807; *see also PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 893 (7th Cir. 2004) ("courts are not in the business of rewriting contracts to appease a disgruntled party unhappy with the bargain it struck"); *Usinger v. Campbell*, 572 P.2d 1018, 1021 (Or. 1977) ("Although the powers of an equity court are broad, they do not permit the court to rewrite the contract for the parties."); *Bonnevier*, 361 P.2d at 266 ("the court will not write contracts for parties").

Because California Northern's entire suit turns on § 12(a), and because § 12(a) is unenforceable in the context of the *Walters* case, it would appear that summary judgment ought to be entered in favor of Gunderson. But Gunderson has not moved for summary judgment, which means that the court can grant summary judgment to Gunderson only "[a]fter giving [California Northern] notice and a reasonable time to respond." Fed. R. Civ. P. 56(f). Notice is hereby provided. California Northern may file a brief by January 7, 2013, setting forth its views as to why summary judgment should not be granted to Gunderson on both counts of the complaint. Gunderson may respond by January 28, 2013, and California Northern may reply by February 11, 2013.

December 10, 2012

_____
United States District Judge