UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CALIFORNIA NORTHERN RAILROAD COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 7170 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| GUNDERSON RAIL SERVICES, LLC, f/k/a | ) | |
| GUNDERSON RAIL SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

This opinion follows and assumes familiarity with the court's earlier opinion in this case

brought by California Northern Railroad Company against Gunderson Rail Services, LLC. __ F.

Supp. 2d __, 2012 WL 6107654 (N.D. Ill. Dec. 10, 2012). To review, Count I of the complaint

alleges that Gunderson had and breached a duty under an indemnification provision in the

parties' Freight Car Inspection & Repair Contract ("Agreement") to defend California Northern

in *Walters v. The Belt Railway Co. of Chicago*, No. 2006 L 7349 (Cir. Ct. Cook Cnty., Ill., filed

July 13, 2006), a suit in which both California Northern and Gunderson were named as

defendants. The indemnification provision states:

> **Section 12. Indemnification**
>
> (a)   Contractor [Gunderson] does hereby assume liability for, and does
>       hereby unconditionally agree to indemnify, protect, save and keep
>       harmless, Railroad [California Northern] and its directors, officers,
>       representatives and employees from and against and agrees to pay,
>       when due, any and all claims and losses arising out of Contractor's
>       work as described in this Agreement. In no event will Contractor be
>       required to indemnify Railroad's [*sic*] for Railroad's negligence.
>
> (b)   In like manner, Railroad does hereby assume liability for, and does
>       hereby unconditionally agree to indemnify, protect, save and keep
>       harmless Contractor and its directors, officers, representatives and

> employees from and against and agrees to pay, when due, *any and all*
> *claims and losses arising out of Railroad's possession, use and*
> *operation of cars*.

Doc. 1-1 at 4 (emphasis added). Count II of the complaint alleges that Gunderson had and breached a duty under the provision to indemnify California Northern in the *Walters* suit.

The court's earlier opinion denied California Northern's motion for summary judgment on Count I. 2012 WL 6107654, at *9. In so doing, the court observed that the rationale underlying its decision—that the indemnification provision, by virtue of its requiring in § 12(a) that Gunderson defend California Northern and in § 12(b) that California Northern defend Gunderson in the *Walters* suit, is so indefinite as to be unenforceable—appeared to entail that summary judgment should be entered against California Northern on both counts of the complaint. *Ibid*. (The court assumed without deciding that § 12(a), standing alone and putting aside any conflict with § 12(b), required Gunderson to defend California Northern.) But because Gunderson had not moved for summary judgment, the court did not grant summary judgment in Gunderson's favor and instead notified the parties of its views and gave them a chance to respond pursuant to Federal Rule of Civil Procedure 56(f). *Ibid*.; *see* Doc. 95.

The parties have filed their Rule 56(f) briefs. Docs. 97, 100, 102. California Northern does not dispute the court's view that, if indeed § 12 required Gunderson to defend California Northern and California Northern to defend Gunderson in the *Walters* suit, the provision is too indefinite to be enforced and summary judgment should be granted to Gunderson. Rather, California Northern offers several reasons why the court should reconsider its view that § 12(b) required California Northern to defend Gunderson in *Walters*. Because California Northern's arguments do not undermine the court's view in that regard, the indemnification provision is fatally indefinite and summary judgment is granted to Gunderson.

First, California Northern argues that the court improperly compared the scope of § 12(b) to the *Walters* complaint's allegations against California Northern, when it should have looked only to the allegations against Gunderson. Doc. 97 at 4-9. As California Northern correctly observes, "[w]hether an insurer has a duty to defend … is determined by comparing the terms of the insurance policy with the allegations of the complaint *against the insured*." *Drake v. Mutual of Enumclaw Ins. Co.*, 1 P.3d 1065, 1068 (Or. App. 2000) (emphasis added). Because Gunderson is the "insured" under § 12(b), the relevant factual allegations are those that the *Walters* complaint makes against Gunderson. The inquiry is complicated somewhat because the *Walters* complaint states claims against both California Northern and Gunderson. Doc. 15-8 at pp. 7-15. But there are separate counts against those two defendants, and so the court will assume with California Northern that the only pertinent factual allegations in the *Walters* complaint are those made in the count against Gunderson. *Id*. at pp. 12-15.

California Northern's argument nonetheless fails. The court's earlier opinion did reference factual allegations made the *Walters* complaint's count against California Northern (Count III). 2012 WL 6107654, at *5-6 (referring to Doc. 15-8 at pp. 9-11, ¶¶ 10, 12-14, 18). But the opinion did so because the *Walters* complaint explicitly incorporated all of those allegations into Count IV, the count against Gunderson. Doc. 15-8 at p. 12 ("the Plaintiff, JOSEPH K. WALTERS, … complaining of the Defendant, GUNDERSON RAIL SERVICES, … restates and realleges the allegations of paragraph 1 through 19 of Count III … as the allegations of paragraphs 1 through 19 of Count IV … as though fully set out herein and incorporated herein by reference."). Thus, for all purposes, it is as though Count III was copied and pasted into Count IV. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading …."); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d

547, 574 (7th Cir. 2012). It follows that the factual allegations in Count III were factual

allegations against Gunderson and thus were properly considered by the court.

California Northern disputes this conclusion with a discussion of *Health Care Industry*

*Liability Insurance Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689 (7th Cir.

2009), a case decided under Illinois law. Doc. 102 at 7-8. Even treated as persuasive authority

for this lawsuit under Oregon law, *Momence* is inapposite. *Momence* was an action brought by

an insurer for a declaration that it had no duty to defend its insured, a nursing home called

Momence, in an underlying suit. The underlying suit was brought under the federal False Claims

Act, 31 U.S.C. § 3729 *et seq.*, and its Illinois counterpart; the relators alleged that Momence had

filed false claims with the United States and the State of Illinois by falsely certifying that it had

met the standard of care required for payment under Medicare and Medicaid. *Id*. at 691 (noting

"the statutory requirement that Medicare and Medicaid providers may not submit claims for

services that failed to meet 'professionally recognized standards of health care'") (quoting 42

U.S.C. § 1320c-5(a)(2)). The underlying complaint included factual allegations that some

nursing home residents had sustained bodily injuries as a result of Momence's failure to comply

with the applicable standard of care. *Ibid*. As relevant here, Momence's insurance policy

provided that the insurer would "pay those sums that the insured [Momence] becomes legally

obligated to pay as damages because of 'bodily injury.'" *Id*. at 692 n.2.

The Seventh Circuit held that the insurer had no duty to defend Momence in the

underlying suit. The court explained that "[a]lthough the allegations in the underlying complaint

detailing the injuries suffered by Momence residents put a human touch on the otherwise

administrative act of false billing, they need not be proven by the plaintiffs to prevail" because

the false claims laws on which the underlying complaint was premised required the relators to

show only that Momence had fallen short of "professionally recognized standards of health care"; whether or not the nursing home residents' injuries had resulted from Momence's allegedly shoddy care was legally irrelevant to whether Momence had made false claims, and so it could not be said that any liability imposed on Momence for filing false claims would have been "because of" the bodily injuries. *Id*. at 694-95. In other words, while the insurance policy's bodily injury coverage could be triggered only by a causal relationship ("because of") between a bodily injury occurring and Momence being obligated to pay damages, the causal relationship in the underlying suit was between Momence providing substandard care (whether or not bodily injury resulted) and Momence being obligated to pay damages. The Seventh Circuit held that the insurance policy was not triggered under those circumstances.

Here, by contrast, § 12(b)'s very broad terms—"any and all claims and losses [against Gunderson] *arising out of* [California Northern's] possession, use and operation of cars" (emphasis added)—*are* triggered by the *Walters* complaint's allegations against Gunderson. The *Walters* complaint alleged that Gunderson committed negligent acts and omissions during the period when California Northern had "delegate[d] the inspection and repair of rail cars traveling on its railroad lines, including the rail car involved in this occurrence, to Gunderson Rail, which then and there became its agent for the purposes of inspecting and repairing rail cars traveling on California Northern's lines," and that "[i]n that regard, … Gunderson Rail, as agent for California Northern, had a duty to repair the handhold on the rail car" that ultimately injured Walters. Doc. 15-8 at pp. 13-14, ¶¶ 24-25. In other words, California Northern's "possession" of the railcar was a necessary predicate to the existence of Gunderson's alleged legal duty, as California Northern's alleged agent, to exercise due care in inspecting and repairing the railcar's handhold. It necessarily follows that Gunderson's alleged liability to Walters "ar[ose] out of"

California Northern's possession of the railcar within the meaning of § 12(b). *See Ristine ex rel. Ristine v. Hartford Ins. Co. of the Midwest*, 97 P.3d 1206, 1208 (Or. App. 2004) ("The term 'arise' ordinarily means 'to originate from a specified source,' *Webster's Third New Int'l Dictionary* 117 (unabridged ed. 1993), or to 'stem [or] result (from),' *Black's Law Dictionary* 102 (7th ed. 1999). Consistently with that ordinary meaning, the term arising out of as used in insurance policies generally is understood broadly to mean '"flowing from"' or '"having its origin in,"' thereby 'indicating that there need be "a" causal connection, rather than a proximate causal connection.' Lee R. Russ & Thomas F. Segalia, 7 *Couch on Insurance 3d* § 101:54 (1997)."). So, unlike the circumstances in *Momence*, the factual allegations against Gunderson in the *Walters* complaint present the relationship contemplated by § 12(b)—the relationship between California Northern's possession of the railcar and Gunderson's alleged liability. *Momence* observed that "factual allegations [in an underlying complaint] are only important insofar as they point to a theory of recovery," 566 F.3d at 696, but that principle is observed here, since if Walters's factual allegations regarding California Northern's possession of the railcar were true, then Gunderson had its alleged duty as California Northern's agent to properly repair the handhold and accordingly could have been liable for a breach of that duty.

Second, California Northern argues that Walters "did not seek to impose liability against Gunderson for Cal Northern's mere possession of railcar SRY 286031," and that he "could recover nothing from Gunderson by proving that Cal Northern possessed the subject railcar." Doc. 102 at 1, 4-6. It is true that California Northern's mere possession of the railcar was not the sole element that Walters had to prove to prevail against Gunderson; Walters also had to show that Gunderson breached a duty and that the breach proximately caused his injury. But § 12(b) does not limit California Northern's duty to defend to cases where Gunderson is potentially

liable *solely* on account of California Northern's possession of railcars; rather, § 12(b) requires

California Northern to defend and indemnify Gunderson for claims "arising out of" California

Northern's possession of railcars.  Moreover, because it is hard to see how Gunderson could ever

be liable *merely* because a railcar had been in California Northern's possession, interpreting

§ 12(b) as limited to situations where a plaintiff sought "to impose liability against Gunderson

for Cal Northern's mere possession of" a railcar would render the provision meaningless,

contrary to California Northern's own (correct) contention that "it is the Court's duty … to strive

for a construction that gives effect to … the terms of Section 12" rather than leaving them

without effect.  Doc. 97 at 13; *see Wayt v. Buerkel*, 875 P.2d 499, 502 (Or. App. 1994).

Third, California Northern argues that the court's earlier opinion deviated from Oregon

law when it relied on a hypothetical example to illustrate a point about its construction of

§ 12(b).  Doc. 97 at 10-13.  California Northern is correct that "[t]he duty to defend applies only

to facts that are explicitly alleged [in the underlying complaint]; it is the actual complaint, not

some hypothetical version, that must be considered."  *Amerisure Mut. Ins. Co. v. Microplastics,

Inc.*, 622 F.3d 806, 812 (7th Cir. 2010) (Illinois law) (internal quotation marks omitted).  In other

words, when a court lines up a complaint against an indemnification provision to determine

whether there is coverage, it must look only to the complaint's actual allegations and may not

also consider hypothetical allegations that, while not inconsistent with the complaint, were not

made in the complaint.  Here is how the insured in *Amerisure* transgressed that rule:

> Microplastics attempts to fill in details in the vague allegations [in the
> underlying complaint] by hypothesizing situations which, if alleged or true,
> would bring the costs charged back to [the plaintiff in the underlying suit]
> within the scope of "property damage" covered by the CGL policies.  For
> example, Microplastics speculates, the costs might refer to damage to the
> personal property of consumers who bought cars.  Microplastics hypothesizes
> that its defective parts might have caused trunk lids to open spontaneously,
> causing the buyers' property in trunks to spill onto the roadways.  Or perhaps

the defective parts allowed water to leak into the passenger or trunk areas, causing damage to property stored in the vehicles. Microplastics contends that because the language of the [underlying complaint] does not specifically foreclose these hypothetical situations, the allegations "potentially" implicate "property damage" under the CGL policies and therefore trigger Amerisure's duty to defend.

622 F.3d at 812.

This court's earlier opinion did not engage in such speculation; it did not hypothesize allegations that, although not included in the *Walters* complaint, were not inconsistent with its allegations and which, had they been alleged, would have brought Walters's claim against Gunderson within the scope of § 12(b). Rather, in responding to California Northern's implausible reading of the term "and" in § 12(b)'s phrase "possession, use and operation of cars," the court gave an example to illustrate the weakness of California Northern's reading. 2012 WL 6107654, at *7. The court was merely illustrating its view that "[r]ead sensibly, § 12(b) obligated California Northern to indemnify Gunderson for liability arising out of California Northern's 'possession' of a car, whether or not the liability also arises out of its 'use' or 'operation' of the car." *Ibid*. The court's illustration did not transgress the rule described in *Amerisure*, and at any rate the court's conclusion would not be altered were the illustrative example excised from the earlier opinion.

Fourth, California Northern contends that "Oregon law requires courts to avoid construing contracts as indefinite." Doc. 97 at 13-14. That is an exaggeration; California Northern does not take issue with the earlier opinion's statement that "[t]he indefiniteness doctrine is part of Oregon law" or the Oregon decisions stating that doctrine. 2012 WL 6107654, at *4. What is true, as evidenced by the authorities quoted in California Northern's brief, is that many cases from Oregon and other jurisdictions require courts to *try* to give meaning to every provision of a contract and to avoid a construction that renders the contract unenforceable. So, if

California Northern were correct that this court was "straining for reasons to strike out of the Agreement Section 12" and that "[r]ather than attempting to reconcile Sections 12(a) and 12(b) so that both are given effect, as required by Oregon law, the [c]ourt … strained to find a way to render them unenforceable," Doc. 97 at 13-14, then this court would indeed have transgressed that principle. But in fact the court's earlier opinion did not "strain" to reach the conclusion that § 12 is internally contradictory and therefore unenforceable for indefiniteness in the particular context of the *Walters* suit. The court's reading of § 12 is the only natural one that gives effect to its terms; it is California Northern's reading that "strains" to excise from § 12(b) its broad obligation to defend and indemnify Gunderson for "any and all claims and losses arising out of the Railroad's possession, use and operation of cars." To render § 12 enforceable in this case, the court would be forced to rewrite and constrict § 12(b), which would be contrary to the law of contracts, in Oregon as elsewhere. *See Usinger v. Campbell*, 572 P.2d 1018, 1021 (Or. 1977) ("Although the powers of an equity court are broad, they do not permit the court to rewrite the contract for the parties."); *Wilder Corp. of Del. v. Thompson Drainage & Levee Dist.*, 658 F.3d 802, 807 (7th Cir. 2011) ("when it is feasible for parties to arrange their affairs by contract they should have to do so rather than be allowed to make a court do it for them").

Fifth, California Northern argues that "Oregon law requires that contractual provisions be construed against the drafter" and that, because "Gunderson is the party that drafted the Agreement," Gunderson should not benefit from the broad scope of § 12(b). Doc. 102 at 12-13. But the principle is not that *all* contractual provisions should be construed against the drafter; rather, it is only that "[i]f, after considering [the contract as a whole], two plausible interpretations remain, then we construe the [ambiguous] phrase against the drafter and in favor of the insured." *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 241 P.3d 710, 723 (Or.

2010).  That principle has no application where, as here, the contract admits of only one

plausible interpretation: that California Northern must indemnify Gunderson for "*any and all*

*claims and losses arising out* of Railroad's possession, use and operation of cars," very broad

language that plainly encompasses Walters's claims against Gunderson.  At any rate, it is not

clear how the principle would apply to § 12(b): Gunderson is both the drafter of and the insured

in that section, so the requirements that the section be construed "against the drafter" and "in

favor of the insured" are at cross-purposes.

Finally, California Northern suggests in a footnote that even if the court grants summary

judgment on Count I, which alleges that Gunderson breached a duty to defend California

Northern in *Walters*, the court should not also grant summary judgment on Count II, which

alleges that Gunderson breached a duty to indemnify California Northern for the settlement it

paid in *Walters*.  Doc. 97 at 2 n.1.  California Northern explains that "[a]lthough the duty to

defend is broader than the duty to indemnify, in cases where the allegations of the complaint do

not fall within the scope of the indemnity provision, but the facts proven thereafter on which

liability is established demonstrate a right to coverage, the duty to indemnify can be triggered

even though the duty to defend was not." *Ibid*.  In support, California Northern cites *Ledford v.*

*Gutoski*, 877 P.2d 80, 84 (Or. 1994) ("Even when an insurer does not have a duty to defend

based on the allegations in the initial complaint, the facts proved at trial on which liability is

established may give rise to a duty to indemnify if the insured's conduct is covered."), *Heider v.*

*Commercial Ins. Co.*, 436 P.2d 268, 269 (Or. 1968) ("the insurer's liability to defend, and

usually to pay a judgment, must be determined by the complaint filed in the initial action against

the insured," but "cases may arise in which the complaint would not allege facts creating a duty

to defend but … the ultimate proof in the case would show a duty to pay a judgment entered on

the complaint"), and *Delta Sand & Gravel Co. v. Gen. Ins. Co. of Am.*, 826 P.2d 82, 85 (Or. App. 1992) ("The duty to pay is independent of the duty to defend and, even if the allegations of the complaint do not show an insured claim, the duty to pay can arise if the evidence at trial shows that judgment was in fact entered on a covered injury.").

As the quoted passages show, California Northern correctly states the relevant principle under Oregon law.  But California Northern confines its discussion to a footnote and makes no attempt to apply that principle to this case; rather, it says that "[t]his memorandum focuses on Count I of Cal Northern's Complaint at Law (duty to defend)" and that "regardless of the Court's holding on the duty to defend, upon the parties' presentation of the facts developed in *Walters*, the Court can determine whether the damages claimed by Cal Northern in Count II [duty to indemnify] arose out of Gunderson's inspection and repair or Cal Northern's possession, use, and operation of railcar SRY 286031."  Doc. 97 at 2 n.1.  California Northern's decision to focus only on Count I and its allusion to further "presentation" are puzzling.  In requesting briefing under Rule 56(f), the court made clear that it was contemplating entering summary judgment on *both* counts of the complaint and gave California Northern a chance to explain why that result should not obtain.  2012 WL 6107654, at *9 ("California Northern may file a brief by January 7, 2013, setting forth its views as to why summary judgment should not be granted to Gunderson *on both counts of the complaint*.") (emphasis added); Doc. 95 ("Plaintiff may file a brief by 1/7/2013 setting forth its views as to why summary judgment should not be granted to Defendant on *both counts of the complaint*.  Defendant shall file its response by 1/28/2013, and Plaintiff may reply by 2/11/2013.") (emphasis added).  Instead of explaining why it thinks summary judgment should not be entered on Count II, California Northern simply refers to case law holding that under certain circumstances the absence of a duty to defend does not necessarily

entail the absence of a duty to indemnify; it makes no effort to establish that such circumstances prevail here.

As California Northern appears to recognize with its reference to further "presentation" by the parties, it is not at all clear that those circumstances prevail here. The three cases cited by California Northern all refer to "the facts proved at trial" in the underlying case, but Walters and California Northern settled rather than proceeding to trial. 2012 WL 6107654, at *3 ("California Northern settled with Walters for $212,500"). California Northern does not suggest that it and Walters stipulated to certain facts in their settlement or explain how this court could determine the true facts in light of the settlement—would this court have to hold the very trial that Walters and California Northern avoided by settling? In any event, California Northern had its chance to argue that the court should deny summary judgment on Count II even if summary judgment was granted on Count I, and it failed to do so. Any arguments California Northern could have made for distinguishing between the two counts are accordingly forfeited. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("As it turns out, Milligan did not make that argument, either here or in the district court. His failure to do so forfeits the argument."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[w]e apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue"); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995).

For the foregoing reasons and those set forth in the court's earlier opinion, the court grants summary judgment to Gunderson on both counts of California Northern's complaint.

April 17, 2013

_____
United States District Judge